UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**OTIS MILLER,**

    **Plaintiff,**

v.                                                         **CASE NO.: 6:20-cv-1221**

**THE FLORIDA DEPARTMENT OF
CORRECTIONS, MILTON GASS,
JOSHUA PETERSILGE,
IAN GRETKA, HUNTER LINGO
JOSEPH JAMES, SCOTT WILSON,
and CHEYENNE JORDAN, in their
individual capacities**

    **Defendants.**
_____/

## COMPLAINT

Plaintiff, Otis Miller ("Miller"), by and through the undersigned counsel, hereby sues the Florida Department of Corrections ("FDC"), Milton Gass ("Gass"), Joshua Petersilge ("Petersilge"), Ian Gretka ("Gretka"), Hunter Lingo ("Lingo"), Joseph James ("James"), Scott Wilson ("Wilson"), and Cheyenne Jordan ("Jordan") in their individual capacities, and allege as follows:

### INTRODUCTION

1. This is an civil rights action for monetary damages as a result of the Defendants' violations of the Civil Rights Act of 1871, 42 U.S.C. § 1983, the Eighth Amendment to the United States Constitution, the Americans with Disabilities Act

of 1990, 42 U.S.C. § 12101, *et seq.* (the "ADA"), and the Rehabilitation Act of 1973, 29 U.S.C. § 701, *et seq.* (the "RA").

2. Plaintiff, an African American man and FDC inmate who has a history of mental and intellectual disabilities.

3. On July 8, 2019, Plaintiff was savagely beaten because he suffers from intellectual disabilities and because he is Black. Indeed, during the savage beating Plaintiff suffered at the hands the Defendants, the Defendants made comments including "beat his Black ass for making us work", "why did you run? You knew we would beat your Black ass", and "I didn't like that ni**er anyways." During this beating Plaintiff was in handcuffs and leg restraints. During the beating, hoping that the Defendants would stop, Plaintiff begged to go to medical and mental health, declaring medical and psychological emergencies. These racial "hits" by White correctional staff against Black inmates are not uncommon or rare within the Florida Department of Corrections.

4. Inmates at FDC regularly suffer malicious and sadistic beatings while incarcerated within the Florida prison system. It is a sad reality that inmates, and specifically Black male inmates, suffer these malicious and sadistic beatings by White correctional captains, sergeants, and officers.

5. This beating of Plaintiff almost never saw the light of day, that is, the truth almost was never exposed. Prior to July 8, 2019, a correctional officer sold or

bartered a cell phone to an inmate who was able to video the malicious and sadistic beating of Plaintiff by the Defendants.

6. The Defendants herein, including specifically Defendant Milton Gass, have a history of covering up malicious and sadistic inmate beatings and ordering subordinates to commit perjury. Defendant Gass should have been fired from FDC prior to July 8, 2019.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over the claims asserted herein pursuant to 28 U.S.C. § 1331 in that this is a civil action arising under the Constitution of the United States.

8. Venue is proper in the Orlando Division in the Middle District of Florida because Plaintiff currently resides in Orlando, Florida, at Lake Correctional Institution, which is 27.9 miles from the federal courthouse in Orlando, Florida for the United States District Court of the Middle District of Florida.

9. The claims alleged herein are brought within the applicable statute of limitations.

10. Plaintiff pursued administrative remedies through compliance with and pursuit of the grievance procedures available to him, and thus satisfied the exhaustion requirement under the Prison Litigation Reform Act's ("PLRA").

## THE PARTIES

11. Plaintiff Miller brings this action for violation of the Eighth Amendment, the ADA, and the RA. At the time of the unlawful beating alleged herein, Plaintiff was housed at Lake Correctional Institution ("Lake CI"). Plaintiff is currently housed at the Central Florida Reception Center ("CFRC"), a prison owned and operated by FDC in Orange County, Florida.

12. Defendant FDC is an agency of the State of Florida that owns and operates correctional facilities in the state, and which receives federal funds to operate its agency. At all times relevant hereto, Defendant FDC owned and operated Lake CI, the facility where Plaintiff was viciously sadistically and maliciously beaten by the Individual Defendants.

### Individual Defendants

13. Defendant Milton Gass (hereinafter "Gass") was a captain at Lake CI on the date of the incident. Since July 8, 2020, and more specifically after the publication of the video depicting the beating Plaintiff suffered, Defendant Gass was fired from FDC.

14. Defendant Joshua Petersilge (hereinafter "Petersilge") was an officer at Lake CI on the date of the incident. Since July 8, 2020, and more specifically after the publication of the video depicting the beating Plaintiff suffered, Defendant Petersilge was fired from FDC.

15. Defendant Ian Gretka (hereinafter "Gretka") was an officer at Lake CI on the date of the incident. Since July 8, 2020, and more specifically after the publication of the video depicting the beating Plaintiff suffered, Defendant Gretka was fired from FDC.

16. Defendant Hunter Lingo (hereinafter "Lingo") was an officer at Lake CI on the date of the incident. Since July 8, 2020, and more specifically after the publication of the video depicting the beating Plaintiff suffered, Defendant Lingo was fired from FDC.

17. Defendant Joseph James (hereinafter "James") was an officer at Lake CI on the date he participated in the sadistic and malicious beating of Plaintiff.

18. Defendant Scott Wilson (hereinafter "Wilson") was a sergeant at Lake CI on the date he participated in the sadistic and malicious beating of Plaintiff.

19. Defendant Cheyenne Jordan (hereinafter "Jordan") was an officer at Lake CI on the date she participated in the sadistic and malicious beating of Plaintiff.

## FACTS

20. Plaintiff is an inmate incarcerated in Defendant Florida Department of Corrections' prison system. The injuries sustained by the Plaintiff occurred at Lake CI, in Clermont, Florida. Plaintiff currently resides in Orlando, Florida, where he continues to suffer damages under his claims.

21. Plaintiff has a history of a mental and intellectual disabilities, including slow or delayed mental processing.

22. Defendant FDC had actual knowledge of Plaintiff's mental and intellectual disabilities through its supervisor employees, including Captain Gass.

## July 8th Beating

23. On July 8, 2019, Plaintiff was at Lake CI and was in leg restraints and handcuffs. Plaintiff was afraid he was going to be beaten by the individual Defendants because Plaintiff knew the individual Defendants to regularly beat inmates without provocation or justification. In other words, the individual Defendants, including specifically Milton Gass, were known by Plaintiff to regularly engage in the sadistic and malicious beatings of inmates.

24. All force used by the individual Defendants violated existing FDC policy, was sadistic and malicious, and violated the Eighth Amendment, as well as the ADA and RA.

25. While handcuffed and while also restrained with leg restraints, Plaintiff obeyed the directives given to him by Defendant James.

26. Nonetheless, Defendant James began to strike Plaintiff.

27. Defendant Lingo was second to arrive to this beating and put Plaintiff in a chokehold. Such chokehold was unnecessary because Plaintiff was restrained and not engaging in any act that justified the force used by Defendant Lingo.

28. Defendants Petersilge and Gass arrived at the beating at approximately the same time. Defendants Petersilge and Gass immediately began to partake in the beating of Plaintiff, with Petersilge opting to stomp on Plaintiff's face and mouth, including kicking Plaintiff in the face, violence common to an attack by White men on helpless, disabled and/or Black men. Defendant Gass choked Plaintiff repeatedly and struck Plaintiff with his fists repeatedly. Such acts were sadistic and malicious.

29. During this beating, Plaintiff declared an inmate medical emergency and inmate psychological emergency, begging for an accommodation, that is, begging them to stop and to not subject him to this unlawful, sadistic, and malicious beating and to receive medical and mental health services.

30. These individual Defendants ignored his requests for an accommodation, with Defendant Petersilge stating that he was going to "beat [Plaintiff's] Black ass for having us work."

31. Defendant Gretka was one of the last officers to arrive to the beating, quickly joining in and striking the Plaintiff with his fists approximately thirteen (13) times. Such acts were sadistic and malicious.

32. Defendants Wilson and Jordan arrived at the beating at approximately the same time as Defendant Petersilge and Gretka, supervising the beating of Plaintiff and failing to come to his aid.

33. Defendant Wilson asked "Why did you run? You knew we would beat your Black ass."

34. To be clear, Plaintiff tried to run to avoid being subject to a sadistic and malicious beating, however, in leg restraints and handcuffs he was unable to get far.

35. After Plaintiff was roughed up enough by the individual Defendants, suffering severe physical injuries, including broken ribs and other serious injuries—despite having requested accommodations and declared inmate medical and psychological emergencies, no less—Plaintiff was taken to the hospital where he spent several days recovering from the vicious beating. Plaintiff continues to suffer from permanent physical, mental, and emotional injuries and harms as a result of this sadistic and malicious beating.

36. Immediately after the beating, Defendant Petersilge bragged about it, stating "I didn't like that ni**er anyways."

37. Racial "hits" and beatings based on inmates' disabilities within the Florida Department of Corrections are far from uncommon or rare.

### Plaintiff's Disability

38. Plaintiff was known and regarded within Lake CI—a prison camp particularly designated and known for handling significant amounts of inmates with disabilities, including mental and intellectual disabilities—as having mental and intellectual disabilities.

8

39. Since Plaintiff was a child, he was known and regarded to have, and did have, intellectual and learning disabilities. Indeed, Plaintiff was placed in classes for children with intellectual disabilities, including students like Plaintiff that had slower processing and cognitive responses, capacities, and capabilities.

40. Plaintiff did not conceal this fact at Lake CI. Quite the contrary, on numerous occasions Plaintiff told Lake CI correctional staff, and Lake CI correctional staff otherwise knew and believed, that Plaintiff was slow when the correctional staff would explain things to Plaintiff or ask him why he did not understand what they were stating to him or asking of him.

41. Defendant Gass and others—known to treat inmates with disabilities and Black inmates worse than non-disabled and White inmates within Lake CI—would regularly and routinely make derogatory comments to Plaintiff making clear that they knew he had intellectual and learning disabilities:

    a. "What, are you telling us that you're retarded?"

    b. "Hey retard!"

    c. "Hey look here comes the dumbass."

    d. "Maybe the retard needs his ass kicked."

42. Thus, it is beyond reproach that Defendant FDC was aware of Plaintiff's disabilities, and regarded Plaintiff as having intellectual, learning, and mental disabilities.

43. Plaintiff's intellectual, learning, and mental disabilities are an impairment that substantially limit Plaintiff's major life activities, including his learning, reading, concentrating, thinking, processing and communicating.

44. Under FDC policy and procedure, prison officials should have immediately called medical and mental health personnel to intervene once Plaintiff declared an inmate medical and psychological emergency. The individual Defendants did not follow policy and procedure.

## COUNT I
## 42 U.S.C. § 1983 – EIGHTH AMENDMENT
### (*Against Defendants Gass, Petersilge, Gretka, Lingo, James, Wilson, and Jordan, the individual Defendants* )

45. Plaintiff incorporates and re-alleges Paragraphs 1 through 44 as if fully set forth herein.

46. This Count is brought through 42 U.S.C. § 1983 and against the individual Defendants for violation of the Eighth Amendment's prohibition of cruel and unusual punishment on prisoners.

47. At all times relevant hereto, the individual Defnedants acted under color of state law and intentionally deprived Plaintiff of his rights under the United States Constitution. The individual Defendants are sued in their individual capacities.

48. While working at Lake CI, a correctional facility owned and operated by Defendant FDC, the individual Defendants intentionally violated Plaintiff's right as a prisoner to be free from cruel and unusual punishment and to be free from the

use of excessive force and to receive appropriate medical care while being detained as a prisoner.

49. Plaintiff had known mental and intellectual impairments, which were serious medical needs and conditions. The individual Defendants were subjectively aware of Plaintiff's mental and intellectual impairments and conditions. Further, Plaintiff's conditions and serious medical needs were so obvious that even a layperson would easily recognize the necessity for medical attention and treatment.

50. The force used by the individual Defendants, or caused to be used by the individual Defendants, was excessive in that it was used maliciously and sadistically for the very purpose of causing harm to Plaintiff.

51. As a direct and proximate result of the individual Defendants' excessive force and failure to stop other individual Defendants from engaging in excessive force, Plaintiff has suffered, continues to suffer, and will continue to suffer, from substantial harm and damages, including permanent physical injuries, disfigurement, and emotional pain and suffering.

WHEREFORE, the Plaintiff, Otis Miller, demands judgment against the Defendants Gass, Petersilge, Gretka, Lingo, James, Wilson, and Jordan for compensatory damages, punitive damages, attorney's fees and costs, and such other relief as this court deems appropriate.

## COUNT II
## TITLE II OF THE AMERICANS WITH DISABILITIES ACT (ADA)
### (*Against Defendant FDC*)

52. Plaintiff incorporates and re-alleges paragraphs 1 through 44 as if fully set forth herein.

53. This count is brought under Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. 12101, *et seq.* and 42 U.S.C. §§ 12131–12134, and its implementing regulations.

54. The ADA prohibits public entities from discriminating against individuals with disabilities in their services, programs, and activities. 42 U.S.C. §§ 12131–12134; *see also* 28 C.F.R. §§ 35.130. In other words, the ADA imposes an affirmative duty on public entities to create policies and procedures to prevent discrimination on the basis of disability.

55. Defendant FDC is a "public entity" within the meaning of 42 U.S.C. § 12131(1) and 28 C.F.R. § 35.104.

56. Plaintiff was disabled as the term is defined in 42 U.S.C. § 12102, 42 U.S.C. § 12131, and 28 C.F.R. § 35.108, as he suffered mental and intellectual impairments that substantially limited one or more major life activities.

57. Plaintiff's mental and intellectual impairments substantially limit one or more major life activities, including but not limited to learning, reading,

concentrating, thinking, processing, and communicating. 42 U.S.C. § 12102(2)(a); 28 C.F.R. § 35.108(c)(1)(i).

58. Plaintiff has a record of having mental and intellectual impairments that substantially limit one or more major life activity, as he has a history of having such impairments. 42 U.S.C. § 12102(1)(B); 28 C.F.R. § 35.108(a)(1)(ii) & (e).

59. Plaintiff is regarded by Defendant FDC as having mental and intellectual impairments that substantially limit one or more major life activity, as Defendant FDC perceived and perceives him as having such impairments. 42 U.S.C. § 12102(1)(C) & (3); 28 C.F.R. § 35.108(a)(1)(iii) & (f). Defendant FDC has subjected Plaintiff to a prohibited action because of his actual and perceived mental and intellectual impairments.

60. Plaintiff was a qualified individual with a disability because he met the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by Defendant FDC, including but not limited to medical services, psychological services, and to be free from excessive force. 42 U.S.C. § 12131(2); 28 C.F.R. § 35.104.

61. Plaintiff was brutally attacked and abused by FDC agents and employees, including the individual Defendants, at Lake CI because of his disabilities and requests for accommodations. Plaintiff was brutally beaten and denied medical treatment, psychological treatment, and intervention due to his

disabilities and his requests for accommodations, which were known to Defendant FDC and its agents and employees, including the individual Defendants. Such abuse and denial of medical attention by Defendant FDC and its agents and employees, including the individual Defendants, was on the basis and in spite of Plaintiff's disabilities. Such abuse and denial of medical attention constitutes discrimination against an individual on the basis of disability in violation of Title II of the ADA. In fact, the beating Plaintiff received was because of his disabilities, and because of his requests for accommodations. In other words, Plaintiff suffered retaliation and discrimination from Defendant FDC and its employees, including the individual Defendants, for requesting accommodations and declaring inmate medical and psychological emergencies.

62. Plaintiff's exercise of his rights under the ADA was interfered with by the Defendant FDC through its agents and employees, including the individual Defendants, in violation of 42 U.S.C. § 12203. *See also* 28 C.F.R. § 35.134.

63. Defendant FDC excluded Plaintiff from participation in, and denied him the benefits of, FDC services, programs, and activities (such as medical services) by reason of his disability. 42 U.S.C. § 12132; 28 C.F.R. § 35.130(a).

64. Defendant FDC subjected Plaintiff to discrimination on the basis of his disability(ies). 42 U.S.C. § 12132; 28 C.F.R. § 35.130(a).

65. Plaintiff's declaration of an inmate medical and psychological emergency, was a request for a reasonable accommodation for his mental and intellectual impairments and to remain free from a sadistic and malicious beating, something all inmates are entitled to. Defendant FDC and its agents and employees, including the individual Defendants, discriminated and retaliated against Plaintiff because of his mental and intellectual disabilities and request for a reasonable accommodation. Defendant FDC and its agents and employees, including the individual Defendants, ignored Plaintiff's reasonable requests for accommodations, and instead discriminated and retaliated against him because of his mental and intellectual disabilities and reasonable requests for accommodations.

66. Defendant FDC failed to provide Plaintiff with equal access to and enjoyment of effective services, programs, or activities that it provides as a public entity. 28 C.F.R. § 35.130(b)(1).

67. Defendant FDC knew about the violations described herein but failed to correct them, thereby exhibiting deliberate indifference to the rights of Plaintiff.

68. Defendant FDC showed deliberate indifference toward Plaintiff and his intellectual and mental disabilities, including but not limited to, when:

    a. The individual Defendants sadistically and maliciously beat Plaintiff because he had mental and intellectual disabilities;

      b.    The individual Defendants continued to sadistically and maliciously beat Plaintiff after he declared medical and psychological emergencies (*i.e.*, requested reasonable accommodations).

69. Had Defendant FDC and its agents and employees, including individual Defendants, not been deliberately indifferent to Plaintiff's intellectual and mental disabilities, Plaintiff would not have suffered life-threatening injuries.

70. As a direct and proximate cause of Defendant FDC's actions and omissions, Plaintiff has suffered, continues to suffer, and will continue to suffer, from substantial harm and violation of his ADA rights.

WHEREFORE, the Plaintiff, Otis Miller, demands judgment against Defendant FDC for compensatory damages, including for permanent physical injury, disfigurement, and emotional pain and suffering, for all prejudgment interest allowable under law, for attorney's fees and costs incurred in connection with this litigation, and for such other relief as this court deems appropriate, just, and proper.

## COUNT III
## SECTION 504 OF THE REHABILITATION ACT (RA)
### (*Against Defendant FDC*)

71. Plaintiff incorporates and re-alleges paragraphs 1 through 44 as if fully set forth herein.

72. This count is brought under Section 504 of the Rehabilitation Act (RA), 29 U.S.C. § 701, *et seq.* and 29 U.S.C. § 791–794, *et seq.*, and its implementing regulations.

73. Section 504 of the RA prohibits discrimination against persons with disabilities by any program or activity receiving Federal financial assistance. 29 U.S.C. § 794(a).

74. Defendant FDC is a program or activity receiving federal financial assistance within the meaning of 29 U.S.C. § 794.

75. Defendant FDC excluded Plaintiff—a qualified individual with a disability—from participation in, and denied him the benefits of, programs or activities by reason of his intellectual and mental disabilities. 29 U.S.C. § 794(a); 29 U.S.C. § 705(20); 28 C.F.R. § 42.503(a).

76. Defendant FDC subjected Plaintiff—a qualified individual with a disability—to discrimination. 29 U.S.C. § 794(a).

77. Defendant FDC denied Plaintiff—a qualified handicapped/disabled person—the opportunity accorded to others to participate in programs and activities. 28 C.F.R. § 42.503(b)(1).

78. Defendant FDC utilized criteria or methods of administration that either purposely or in-effect discriminate on the basis of handicap/disability, and defeat or

substantially impair accomplishment of the objectives of FDC's programs or activities with respect to handicapped/disabled persons. 28 C.F.R. § 42.503(b)(3).

79. Defendant FDC knew about the violations described herein but failed to correct them, thereby exhibiting deliberate indifference to the rights of Plaintiff.

80. As a direct and proximate cause of Defendant FDC's exclusion and discrimination, Plaintiff has suffered, continues to suffer, and will continue to suffer, from substantial harm and violation of his rights under the RA.

WHEREFORE, the Plaintiff, Otis Miller, demands judgment against Defendant FDC for compensatory damages, including for permanent physical injury, disfigurement, and emotional pain and suffering, for all prejudgment interest allowable under law, for attorney's fees and costs incurred in connection with this litigation, and for such other relief as this court deems appropriate, just, and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial for all counts alleged above.

DATED this 9th day of July, 2020.

[*Signatures on following page*]

Respectfully submitted,

**ANDREWS LAW FIRM**
822 North Monroe Street
Tallahassee, Florida 32303
T: (850) 681-6416 / F: 681-6984

*/s/ Ryan J. Andrews*
STEVEN R. ANDREWS (FBN: 0263680)
steve@andrewslaw.com
RYAN J. ANDREWS (FBN: 0104703)
ryan@andrewslaw.com
JOHN M. VERNAGLIA (FBN: 1010637)
john@andrewslaw.com
service@andrewslaw.com
*Counsel for Plaintiff*