**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**OCALA DIVISION**

OTIS MILLER,

    Plaintiff,

v.                                                                          CASE NO.: 5:20-cv-323-JSM-PRL

FLORIDA DEPARTMENT OF
CORRECTIONS, et al.,

    Defendants.
_____/

**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**
**AND INCORPORATED MEMORANDUM OF LAW**

Plaintiff Otis Miller, by and through the undersigned counsel, pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, hereby files this Motion for Partial Summary Judgment, moving this honorable Court for the entry of an Order granting judgment as to the issue of whether Plaintiff is has a disability for purposes of his claims against Defendant Florida Department of Corrections ("FDC") for violation of the Americans with Disabilities Act ("ADA") and the Rehabilitation Act ("RA"). The record evidence indisputably demonstrates that Plaintiff had a documented developmental disability during his incarceration, including prior to and at the time of the events giving rise to this action. Accordingly, Plaintiff is entitled to summary judgment as to the disability element of his ADA and RA claims.

# I. INTRODUCTION

This is a civil rights action for damages. Plaintiff has sued Defendants for deliberately depriving Plaintiff of his rights under the United States Constitution. Specifically, Plaintiff asserts claims against Defendants Gass, Petersilge, Gretka, Lingo, and James (the "Individual Defendants") for using excessive force on Plaintiff in a malicious and sadistic manner in violation of the Eighth Amendment to the United States Constitution (Count I), and against Defendant FDC for discriminating against Plaintiff on the basis of disability in violation of the ADA and RA (Counts II and III, respectively).

Plaintiff has been incarcerated in the custody of FDC since January 2002. He has a history of physical, mental, and intellectual disabilities. In particular, and unsurprisingly, Plaintiff was diagnosed with a developmental disability by Dr. Virginia Mesa, the Chief Health Officer at Lake Correctional Institution ("Lake CI"), in July 2017. Plaintiff was assigned a corresponding impairment/disability grade of "SY" based on his diagnosis with a developmental disability. Under FDC policy, this impairment grade identifies that Plaintiff has a documented developmental disability. There has been no change to Plaintiff's impairment grade since July 2017. Thus, Plaintiff had a documented disability at all times relevant to this action, including at the time of the unlawful beating inflicted by the Individual Defendants on July 8, 2019.

In order to recover compensatory damages in connection with his ADA and RA claims, Plaintiff must establish that he had a disability within the meaning of the ADA and RA. Because there can be no genuine dispute that Plaintiff had a documented developmental disability during his incarceration and at all times relevant to this action, Plaintiff is entitled to summary judgment as to the disability element of his ADA and RA claims.

## II. STATEMENT OF UNDISPUTED, MATERIAL FACTS

Plaintiff is a forty-five (45) year old inmate incarcerated in Defendant FDC's prison system and has been in FDC's custody, continuously and without interruption, since January 9, 2002. *See* Plaintiff's Inmate Population Information Detail [ECF No. 71-1]; *see also* Plaintiff's FDC Medical Records[1] [ECF Nos. 71-2 and 71-3]. Plaintiff has a documented history and record of being developmentally disabled and was diagnosed with such disability by FDC medical staff—namely, Dr. Virginia Mesa, Chief Health Officer at Lake CI—in July 2017. *See* ECF No. 71-2 at 326. Based on this disability diagnosis, Plaintiff was assigned a corresponding impairment/disability grade of "**SY** = Developmentally disabled." *See id.*; *see also* Health Services Bulletin 15.03.13, Assignment of Health Classification Grades to Inmates [ECF No. 71-4] ("HSB 15.03.13") at 9.

---

[1] Plaintiff's Medical Records, as produced by Defendant FDC, are separated into two volumes (totaling 666 pages). *See* ECF Nos. **71-2** (Bates 0001-0332) and **71-3** (Bates 0333-0666).

3

According to FDC policy,

> Developmental disabilities cause individuals living with them many difficulties in certain areas of life, especially in language, mobility, learning, self-help, and independent living. It reflects the person's need for a combination and sequence of special, interdisciplinary, or generic care, treatment, or other services which are lifelong or extended duration and are individually planned and coordinated. Examples are intellectual disability, autism, Down syndrome, severe epilepsy, brain injury, and Alzheimer's disease. ***This impairment grade identifies that the inmate has a documented developmental disability.***

HSB 15.03.13 at 9 (emphasis added); *see also* FDC Procedure 604.101, Americans with Disabilities Act Provisions for Inmates [ECF No. 71-5] ("Procedure 604.101") at 2 ("Developmentally Disabled . . . refers to a diverse group of chronic conditions that is due to mental and/or physical impairments."). FDC policy further instructs that "[i]nmates designated under the following impairment grades [including SY, meaning developmentally disabled] will be considered qualified individuals with impairments and/or disabilities as defined by Procedure 604.101, Americans with Disabilities Act Provisions for Inmates, for basic FDC services of housing and transportation." HSB 15.03.13 at 5. There has been no change to Plaintiff's impairment/disability grade since July 2017—which, again, was determined by Lake CI's Chief Health Officer, Dr. Mesa. *See generally* Plaintiff's FDC Medical Records [ECF Nos. 71-2, -3]. Thus, Plaintiff had a documented developmental disability at all times relevant to this action, including at the time Plaintiff was subjected to excessive and unlawful physical abuse on July 8, 2019, at Lake CI.

### III. LEGAL STANDARD

Summary judgment is appropriate and should be granted when "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to summary judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Everett v. Napper*, 833 F.2d 1507, 1510 (11th Cir. 1987).

An issue of fact is "genuine" if the record as a whole could lead a rational trier of fact to find for the nonmoving party; however, the "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). "An issue of fact is 'material' if it is a legal element of the claim, as identified by the substantive law governing the case, such that its presence or absence might affect the outcome of the suit." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 998 (11th Cir. 1992) (citing *Anderson*, 477 U.S. at 248).

A movant's "burden under Rule 56 of 'showing' there are no genuine issues of material fact does not mandate citing record evidence at every turn." *Humphreys v. General Motors Corp.*, 839 F. Supp. 822, 825 (N.D. Fla. 1992). Conversely, in opposing summary judgment, "Rule 56(e) . . . requires the nonmoving party to go

beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Unum Life Ins. Co. of Am. v. Sisk*, No. 4:12cv62-RH/CAS, 2012 U.S. Dist. LEXIS 184554, at *4 (N.D. Fla. Dec. 6, 2012) (quoting *Owen v. Wille*, 117 F.3d 1235, 1236 (11th Cir. 1997)).

"The Eleventh Circuit has consistently held that conclusory allegations without specific supporting facts have no probative value, and are legally insufficient to defeat summary judgment." *United States v. Neely*, No. 3:07cv217/MCR/EMT, 2008 U.S. Dist. LEXIS 115307, at *8 (N.D. Fla. Sep. 29, 2008) (citing *Leigh v. Warner Bros., Inc.*, 212 F.3d 1210. 1217 (11th Cir. 2000); *Sammons v. Taylor*, 967 F.2d 1533, 1544-5 & n.5 (11th Cir. 1992)). Thus, "[t]he court is not obliged [] to deny summary judgment for the moving party when the evidence favoring the nonmoving party is 'merely colorable or is not significantly probative.'" *Id.* at *7 (quoting *Anderson*, 477 U.S. at 249-50). Additionally, while "facts must be viewed in the light most favorable to the nonmoving party," such inferences are proper "**only if there is a 'genuine' dispute as to those facts**." *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)) (emphasis added).

## IV. DISCUSSION

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.[2] To prevail upon a claim under Title II of the ADA, a plaintiff must establish:

> (1) that he is a qualified individual with a disability; (2) that [s]he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) that the exclusion, denial of benefit, or discrimination was by reason of the plaintiff's disability.

*Bircoll v. Miami-Dade Cty.*, 480 F.3d 1072, 1083 (11th Cir. 2007) (citing *Shotz v. Cates*, 256 F.3d 1077, 1079 (11th Cir. 2001)). "The elements of Title II may be further refined and a Plaintiff can proceed on theories 'of intentional discrimination, disparate treatment, or failure to make reasonable accommodations.'" *Garner v. Bryson*, No. 5:16-cv-121, 2018 U.S. Dist. LEXIS 230515, at *10 (M.D. Ga. Jan. 11,

---

[2] Section 504 of the RA contains virtually identical wording, except that it proscribes discrimination "under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794. The only relevant difference [from the ADA] is that the RA has a federal funding requirement. *See Badillo v. Thorpe*, 158 F. App'x 208, 214 (11th Cir. 2005). It is also well-settled that "[d]iscrimination claims under the Rehabilitation Act are governed by the same standards used in ADA cases." *Cash v. Smith*, 231 F.3d 1301, 1305 (11th Cir. 2000); *see also Silberman v. Miami Dade Transit*, 927 F.3d 1123, 1134 (11th Cir. 2019) ("given the textual similarities between the two statutes, 'the same standards govern' claims under both, and we 'rely on cases construing [Title II and § 504] interchangeably'") (quoting *T.W. ex rel. Wilson v. Sch. Bd. of Seminole Cty., Fla.*, 610 F.3d 588, 604 (11th Cir. 2010)). Thus, Plaintiff's ADA and RA claims are properly analyzed using the same standard.

2018) (quoting *Rylee v. Chapman*, 316 F. App'x 901, 906 (11th Cir. 2009), and citing *Schwarz v. City of Treasure Island*, 544 F.3d 1201, 1212 n.6 (11th Cir. 2008)). "[A] disabled prisoner can state a Title II-ADA claim if he is denied participation in an activity provided in state prison by reason of his disability." *Bircoll*, 480 F.3d at 1081 (citing *Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 211 (1998)). Moreover, a qualified inmate who is denied the benefit of medical services by reason of his disability can state a Title II-ADA claim. *See Garner*, 2018 U.S. Dist. LEXIS 230515, at *9-10 (citing *Yeskey*, 524 U.S. at 211, 213; *Bircoll*, 480 F.3d at 1081).

### A. Plaintiff Has A "Disability" [3]

The ADA defines "disability" as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1); *see also* 28 C.F.R. § 35.108(a)(1). Plaintiff only needs to satisfy one of those definitions. *Gordon v. E.L. Hamm & Assocs.*, 100 F.3d 907, 911 (11th Cir. 1996); 28 C.F.R. § 35.108(a)(2)(ii). Moreover, "[t]he definition of 'disability' shall be construed broadly in favor of expansive coverage, to the maximum extent permitted by the terms of the ADA." 28 C.F.R. § 35.108(a)(2)(i).

---

[3] To be clear, Plaintiff seeks summary judgment only on the disability element of his ADA and RA claims at this time, and expressly reserves the right to move for summary judgment on the remaining elements of his claims at the later date.

A "physical or mental impairment" means, in pertinent part, "[a]ny physiological disorder or condition . . . affecting one or more body systems," such as the neurological system, or "[a]ny mental or psychological disorder such as intellectual disability, organic brain syndrome, emotional or mental illness, and specific learning disability." 28 C.F.R. § 35.108(b)(1).

Major life activities include caring for oneself, speaking, learning, reading, concentrating, thinking, writing, communicating, and interacting with others. *Id.* § 35.108(c)(1)(i). Major life activities also include the operation of a major bodily function—including, namely, brain function. *Id.* § 35.108(c)(1)(ii). "Whether an activity is a major life activity is not determined by reference to whether it is of central importance to daily life." *Id.* § 35.108(c)(2)(ii).

The term "substantially limits" must be "construed broadly in favor of expansive coverage, to the maximum extent permitted by the terms of the ADA." *Id.* § 35.108(d)(1)(i). An impairment only needs to substantially limit one major life activity to be considered a disability. *Id.* § 35.108(d)(1)(iii). "The primary object of attention in cases under Title II of the ADA should be whether public entities have complied with their obligations and whether discrimination has occurred. . . . Accordingly, the threshold issue of whether an impairment 'substantially limits' a major life activity should not demand extensive analysis." *Id.* § 35.108(d)(1)(ii).

9

In addition to providing the above-referenced definitions and guiding principles, the ADA regulations further identify certain "types of impairments," which "will, at a minimum, substantially limit the major life activities indicated." *Id.* § 35.108(d)(2)(iii) ("Predictable assessments"). Notably, in applying these principles, the Attorney General[4] has concluded that "Intellectual disability substantially limits brain function." *Id.* § 35.108(d)(2)(iii)(C); *see also id.* § 35.108(d)(2)(iii)(E), (I), (K) (recognizing autism, epilepsy, and traumatic brain injury as impairments that substantially limit brain and/or neurological function). Thus, an individual impaired by an intellectual disability, autism, epilepsy, traumatic brain injury, or any of the other impairments listed will, "in virtually all cases," result in a determination coverage under the "actual disability" prong or the "record of" prong of the ADA analysis. *See id.* § 35.108(d)(2)(ii)-(iii).

In this case, it is undisputed that Plaintiff was diagnosed with a developmental disability by Dr. Virginia Mesa, the Chief Health Officer at Lake CI, in July 2017. As a result, Plaintiff was given a corresponding impairment/disability grade of "SY" to acknowledge his developmentally disabled status. *See* ECF No. 71-2 at 326. FDC recognizes that developmental disabilities cause individuals living with them many difficulties in certain areas of life, especially in language, mobility, learning, self-

---

[4] "Because Congress explicitly authorized the Attorney General to promulgate regulations under the ADA, *see* 42 U.S.C. § 12134(a), the regulations 'must [be given] legislative and hence controlling weight . . . .'" *Shotz*, 256 F.3d at 1079 n.2.

help, and independent living, and reflect the person's need for a combination and sequence of lifelong care, treatment, or services. *See* HSB 15.03.13 at 9.

Moreover, FDC explicitly recognizes "intellectual disability" and five other impairments[5] as an example of a developmental disability. Although FDC did not identify the specific type of developmental disability Plaintiff suffers from in the incomplete records produced to date, FDC nonetheless identified Plaintiff as having a developmental disability, which includes each of the six examples/types listed in HSB 15.03.13 as recognized disabilities, including intellectual disability. Thus, the mere fact that Plaintiff was assigned the SY impairment/disability grade means that Plaintiff was identified ***by FDC*** as having a documented developmental disability, regardless of the specific type, but at least one of the types listed in HSB 15.03.13 or a similar impairment within the penumbra of developmental disability that would qualify under the ADA. *See* Procedure 604.101 at 2 (acknowledging that the term 'developmentally disabled' refers to a diverse group of chronic conditions that is due to mental and/or physical impairments).

Notably, Plaintiff's status as a developmentally disabled inmate has remained unchanged since Dr. Mesa's diagnosis and assignment of an impairment/disability grade in July 2017. Any inmate who is assigned an impairment/disability grade is

---

[5] FDC policy states: "Examples [of developmental disability] are intellectual disability, autism, Down syndrome, severe epilepsy, brain injury, and Alzheimer's disease." HSB 15.03.13 at 9.

11

considered disabled under both the ADA and by FDC. Accordingly, there can be no genuine dispute that Plaintiff has a documented developmental disability within the FDC, and that FDC regarded Plaintiff as developmentally disabled.

Lastly, based on Plaintiff's documented developmental disability within FDC, "the necessary individualized assessment should be particularly simple and straightforward," and thus "it should easily be concluded" that Plaintiff suffered from an impairment (*i.e.*, developmental/intellectual disability) that substantially limited at least one major life activity (*i.e.*, brain function). *See* 28 C.F.R. § 35.108(d)(2)(ii); *id.* § 35.108(d)(2)(iii)(C) ("Intellectual disability substantially limits brain function"); *see also id.* § 35.108(d)(2)(iii)(E) (autism); *id.* § 35.108(d)(2)(iii)(I) (epilepsy); *id.* § 35.108(d)(2)(iii)(K) (traumatic brain injury); *Harvard v. Inch*, 411 F. Supp. 3d 1220, 1240-41 (N.D. Fla. 2019) (citing 28 C.F.R. § 35.108(d)(2)(iii) and concluding that each plaintiff alleged a type of impairment that substantially limited the major life activities indicated).

Accordingly, Plaintiff is entitled to summary judgment as to the disability element of his ADA and RA claims since there can be no genuine dispute that Plaintiff was diagnosed with, had a record of, and was regarded by FDC as having a developmental disability during his incarceration, including prior to and at the time of the events giving rise to this action.

## V. CONCLUSION

WHEREFORE, for the reasons set forth above, Plaintiff respectfully requests that this Court (1) conclude that Plaintiff has a disability within the meaning of the ADA and RA based on his documented developmental disability within the FDC and (2) grant partial summary judgment as to the disability element of Plaintiff's ADA and RA claims against FDC.

Respectfully submitted,

**ANDREWS LAW FIRM**
822 North Monroe Street
Tallahassee, Florida 32303
T: (850) 681-6416 / F: 681-6984

***/s/ John M. Vernaglia***
JOHN M. VERNAGLIA (FBN 1010637)
RYAN J. ANDREWS (FBN 0104703)
DAVID A. WEISZ (FBN 1023229)
john@andrewslaw.com
ryan@andrewslaw.com
david@andrewslaw.com
service@andrewslaw.com
*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 22nd day of June 2021, a true and correct copy of the foregoing was electronically filed in the United States District Court for the Middle District of Florida using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

*/s/ John M. Vernaglia*
JOHN M. VERNAGLIA